UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
IRA CHERNICK as Administrator of the
Estate of MARYANN OST CHERNICK,

                            Plaintiff,

       -against-

POLICE OFFICER JESUS FAYA,
POLICE OFFICER ARGAND REYES,
POLICE OFFICER MICHAEL SWEET,
POLICE OFFICER CHARLES
TRAMONTANA individually, OFFICERS
"JOHN DOE" 1-2 (fictitiously named)
individually, and THE COUNTY OF SUFFOLK,

                         Defendants.
--------------------------------------------------------------X

**Docket No.:**
**19 -CV-7093(ARR)(ST)**

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HARFENIST KRAUT & PERLSTEIN, LLP
*Attorneys for Plaintiff*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
(516) 355-9600

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................i

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .........................................................................................2

    A.    Events Leading Up to Maryann's Injury..............................................2

    B.    Defendants' Differing Versions of Events............................................5

        1.    Faya's Testimony ........................................................6
        2.    Reyes' Testimony.........................................................7
        3.    Sweet's Testimony ......................................................8
        4.    Tramontana's Testimony.............................................9
        5.    Dr. Mostafavi's Testimony as to the Injuries Sustained
            by Maryann...............................................................10
        6.    Dr. Luch's Testimony as to the Injurieis Sustained by
            Maryann...................................................................11

POINT I    AS THE PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE
            CANNOT BE DETERMINED AS A MATTER OF LAW,
            SUMMARY JUDGMENT IS INAPPROPRIATE............................12

    A.    The Standards of a Fourth Amendment Excessive Force Claim ........12

    B.    The Evidence Presents Questions of Fact as to Whether the
        Officer's Used Excessive Force ..........................................................15

POINT II    THE DEFENDANTS ARE NOT ENTITLED TO
            QUALIFIED IMMUNITY....................................................................19

POINT III    MARYANN'S STATEMENTS TO HER HUSBAND AS TO HOW
            SHE SUFFERED A BROKEN ARM ARE ADMISSIBLE...............23

CONCLUSION .......................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Dep't of Pub. Safety*
  764 F.3d 244, 255 (2d Cir. 2014)..........................................................................20
*Brown v. City of New York*
  798 F.3d 94, 100 (2d Cir. 2015)............................................................................13
*Chamberlain v. City of White Plains*
  960 F.3d 100, 113 (2d Cir. 2020)..........................................................................14
*Compare Pinero v. Burban*
  18-CV-4698, 2021 WL 4224727, at *4 (S.D.N.Y. Sept. 16, 2021) ......................18
*Costanzo v. Cnty. of Suffolk*
  No. 16CV3871JMAARL, 2022 WL 742875, at *3 (E.D.N.Y. Mar. 11, 2022)...24
*Cowan v. Breen*
  352 F.3d 756, 764 (2d Cir. 2003)..........................................................................20
*Curry v. City of Syracuse*
  316 F.3d 324, 332 (2d Cir. 2003)..........................................................................22
*D.R. by Rodriguez v. Santos Bakery, Inc.*
  675 F. Supp. 3d 355, 360 (S.D.N.Y. 2023)...........................................................19
*Est. of Priolo by Priolo v. City of New York*
  No. 15-CV-6080(AMD)(ST), 2019 WL 1428403,
  at *5 (E.D.N.Y. Mar. 29, 2019)............................................................................15
*Graham v. Connor*
  90 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ...............................13
*Husbands ex rel. Forde v. City of New York*
  335 F. App'x 124, 128 (2d Cir. 2009)...................................................................22
*Jackson v. Tellado*
  236 F. Supp. 3d 636, 661 (E.D.N.Y. 2017) ..........................................................21
*Jones v. Parmley*
  465 F.3d 46, 61 (2d Cir. 2006) .............................................................................14
*Jones v. Treubig*
  963 F.3d 214, 224 (2d Cir. 2020) ................................................................. 14, 21
*Lennox v. Miller*
  968 F.3d 150, 155 (2d Cir. 2020)..........................................................................15
*McKinney v. City of Middletown*
  712 F. App'x 97, 98 (2d Cir. 2018).......................................................................14
*Moreira v. City of New York*
  No. 19CV5402CBARER, 2022 WL 1230412,
  at *4 (E.D.N.Y. Jan. 14, 2022) .................................................................... 15, 16

*O'Bert ex rel. Estate of O'Bert v. Vargo*
   331 F.3d 29, 37 (2d Cir. 2003) ..............................................................15
*Pearson v. Callahan*
   555 U.S. 223, 231, 129 S.Ct. 808 (2009) ( ...........................................20
*Saucier v. Katz*
   533 U.S. 194, 206 (2001) ......................................................................21
*Singh v. City of New York*
   No. 23-24-CV, 2024 WL 319117, at *5 (2d Cir. Jan. 29, 2024) .........................21
*Sloley v. VanBramer*
   945 F.3d 30, 36 (2d Cir. 2019) ..............................................................20
*Stephenson v. Doe*
   332 F.3d 68, 81 (2d Cir. 2003) .............................................................20
*Sullivan v. Gagnier*
   225 F.3d 161, 166 (2d Cir. 2000) ..........................................................14
*Tracy v. Freshwater*
   623 F.3d 90, 96 (2d Cir. 2010) ..............................................................13
*United States v. Scarpa*
   913 F.2d 993 (2d Cir. 1990) ..................................................................23
*United States v. Tocco*
   135 F.3d 116, 127 (2d Cir. 1998) ..........................................................23

**Rules**
Fed. R. Evid. 803 ........................................................................... 19, 23

## PRELIMINARY STATEMENT

This excessive force case under 42 U.S.C. § 1983 presents questions of fact on the crucial issue regarding how plaintiff, Maryann Ost ("Maryann"), suffered a twisting fracture such that summary judgment is inappropriate on the merits.

Because the Defendants present varying versions as to how Maryanne came to be handcuffed, all deny twisting or applying significant force to her arm, which her treating doctor and expert say is the only way the injury could have occurred, and whether she was resisting arrest, the issue of objective reasonableness must be decided by a jury.

Likewise, summary judgment on the issue of qualified immunity is unwarranted based upon these same questions of fact. The law was clearly established that unless an arrestee was resisting, and even then, the amount of force must be tempered, the use of force sufficient to fracture an arm is not appropriate. And, the fact issues as to how Maryann's arm was fractured does not lead to a conclusion that reasonable officers could differ on the use of the amount of force used.

Finally, Maryann's statements to her husband after being released from jail and being arraigned constitute excited utterances as they were made under sufficient stress to fall within the hearsay exception.

## STATEMENT OF FACTS

Maryann sued[1] for deprivation of her Fourth and Fourteenth Amendment rights committed by Suffolk County Police Officers Jesus Faya ("Faya"), Argand Reyes ("Reyes"), Michael Sweet ("Sweet"), and Charles Tramontana ("Tramontana"), who, following a traffic stop and arrest, employed excessive force against a mere one hundred ten pound woman and caused her to sustain a spiral fracture of her right arm, which was treated by an open reduction with internal fixation of a steel plate using wires and screws. (Second Amended Complaint ["SAC"], generally).[2]

### A.    Events Leading Up to Maryann's Injury

On February 9, 2019, Maryann was traveling home on the Long Island Expressway after a social visit in Deer Park when she heard a siren and observed flashing lights; believing it belonged to an ambulance in an emergency, she tried to move out of the way. (SAC ¶15-17).

Instead of an ambulance, the vehicles following Maryann were Suffolk County Police vehicles driven by Faya and Tramontana, who did not identify

---

[1] Shortly after the start of the action Maryann passed away due to circumstances unrelated to the events alleged in the Amended Complaint. Maryann's husband, Ira Chernick, was appointed administrator of her estate and the estate substituted as the party plaintiff. (Second Amended Complaint ["SAC"] ¶¶ 2-3). The SAC and Defendants' Answer to the SAC ("Answer") are annexed to the Declaration of Steven J. Harfenist ["Harfenist Dec."] dated July 26, 2024 in Opposition to Plaintiff's Summary Judgment motion as Exhibits 1 and 2, respectively. All numbered Exhibits 1-6 referenced herein are annexed to the Harfenist Dec.

themselves as members of law enforcement. (SAC ¶18, 21). Faya and Tramontana – who were also joined by Reyes and Sweet - followed her at a high rate of speed, eventually reaching her home in Jericho, New York. (SAC ¶19-20). Maryann, exhibiting panic and fear, tried to exit her vehicle in the driveway, but was forcefully thrown to the ground by Faya, Reyes, Sweet, and Tramontana and pinned to the asphalt. (SAC ¶22-26).

While Defendants' Answer denies knowledge or information of their actions, the officers admit such facts in their pre-trial depositions, but recite different versions of events. (SAC ¶25-26, Answer ¶2-3).

Maryann was of a slight build and weighed less than one hundred and ten pounds, which differed significantly from the officers, who were at least six inches taller and one hundred pounds heavier. (SAC ¶28-29). This disproportion in weight and height made it nearly impossible for Maryann to flee from the officers or to be perceived as a threat. (SAC ¶30-32). Each officer testified to their knowledge of this disparity in height and weight when Maryann's injuries occurred:

- Officer Faya observed Maryann as a "small-framed person" with a height of about 5'2, and he testified to being 5'7. (Ex. A[3] at Pg. 46:17-25, Pg. 47:1-7).
- Officer Sweet testified that he "wouldn't say she was heavy" and that he was 5'7 and a half, weighing about one hundred and seventy-five

---

[3] Letter exhibits referenced herein are annexed the Defendants' moving papers.

(175) pounds while also lifting weights during the time of these events. (Ex. J at Pg. 41:18-19, Pg. 58:11-15, Pg. 59:8-10).

- Officer Tramontana observed Maryann as slight and testified that he weighed two hundred and twenty-five (225) pounds and was 5'11. (Ex. I at Pg. 46:2-4, Pg. 48:13-15, Pg. 50:9-10).

- Officer Reyes also testified that Maryann "seemed slight." (Ex. K at Pg. 75:8).

Although Defendants paint a picture of a woman participating in unlawful conduct, disobeying law enforcement commands, and fleeing arrest, her husband Ira describes Maryann as a "sweet person" who never acted irrationally or violently towards him or anyone else. (See, Ex. M at Pg. 44:23-25, Pg. 45:2-7). Plaintiff also testified that his wife suffered from depression and was treated with medications prescribed by psychologist Allan Stempler. (Ex. M Pg. 35:14-16, Pg. 36:6-14).

Maryann was also seeing Dr. Weingarten for pain, specifically on her stomach where she had previously had tumorous growths. (Ex. M Pg. 40:8-14, Pg. 41:3-4, 20-25).

Aside from her prescriptions, Maryann consumed no illegal drugs, nor was she consuming any alcoholic beverages. (Ex. M Pg. 42:15-23, Pg. 43:5-25).

Defendants told Maryann's husband they needed to take her to the hospital because she had a car accident but when he saw the car, all he saw was a little dent in the rear bumper he knew he had previously caused. (Ex. M Pg. 68:8-17).

Plaintiff's interactions with Defendants that night was unpleasant. He only felt fear and described them as not being polite; and refusing to tell him which hospital his wife was going to. (Ex. M Pg. 68:16-20, Pg. 75:3-7).

The following day, Plaintiff picked up Maryann from Suffolk County Criminal Court, after she was released from a night in jail and being arraigned and said he felt sick looking at her, a "skinny little girl" who was "all beat up." (Ex. M Pg. 80:2, 14-20). He recalled bruising all over her face and a limp arm, which she told him resulted from the police beating she received during the arrest. (Ex. M Pg. 81:6-13, Pg. 82:13, Pg. 83:5-8).

Although there is no evidence that Maryann threatens the Defendants, they repeatedly scraped her face back and forth across the asphalt with enough force to cause cuts and abrasions and damage Maryann's teeth and intentionally twisted her arms with enough force to break Maryann's right arm. (SAC ¶34-35).

## B.    Defendants' Differing Versions of Events

Faya, Reyes, Sweet, and Tramontana present different versions of the arrest. And most of their testimony is contradicted by the testimony of Dr. Hamid Mostafavi's, Maryann's doctor, and Plaintiff's expert, Dr. Jonathan Luchs, on the central issue of how Maryann obtained a broken right arm requiring a surgical repair with a plate insertion attached at the bone with wires and screws. (See Ex. 3 at Pg. 33-35:10-17).

5

### 1.    Faya's Testimony

Faya testified he first saw Maryann on the Long Island Expressway around 11:45 pm on February 9, 2019, after hearing a transmission from Tramontana, who was pursuing a vehicle purportedly involved in a hit and run at a CVS pharmacy. (Ex. A Pg. 31:3-9, 10-25). He estimated Maryann's car was driving sixty miles per hour, and, contrary to the testimony of Tramontana, Faya testified that he was directly behind Maryann's car. (Ex. A Pg. 33:20-25, Pg. 34:1-25, Pg. 35:24-15, Pg. 36:3-10, Pg. 37:18-25, Pg. 38:1-4).

After arriving to her Jericho home, according to Faya, Maryann walked out of the driver's side door towards the front of her car and stopped at her garage door to enter numbers into a keypad. (Ex. A Pg. 47:13-16, Pg. 48:3-4).

Faya testified that Officer Tramontana was the first person to encounter Maryann, who brought Maryann to the ground by grabbing and pulling her. (Ex. A Pg. 51:10-14, Pg. 52:17-25). He saw that the left side of her face, chest, torso, and legs were on the ground, but the entire right side of her body was off the ground. (Ex. A Pg. 54:2-20).

Faya felt concerned for his safety because Maryann's hands were tucked into her waistband, and he was unsure if she was armed. To protect himself, Faya took control of Maryann's hands, observing that she had no weapons, while Officer Sweet tried to access her right arm. (Ex. A Pg. 59:15-20, Pg. 60:12-16).

Faya testified to striking Maryann in the back to get her to move her hands to make it easier for the officers to handcuff her but does not recall if this is a specific tactic he was taught to cause an individual to move their hands and laughed when asked if he committed these actions out of his anger towards Maryann. (Ex. A Pg. 63:16-25, Pg. 64:3-4, Pg. 65:15-21).

Conflicting with Sweet and Tramontana, Faya testified to handcuffing Maryann's left hand while Sweet handcuffed her right hand and Tramontana was holding down her legs. (Ex. A Pg. 66:20-25, Pg. 67:2-50, Pg. 68:9-18). Faya further testified to pulling Maryann's left hand towards her right hand but forgets pulling her right hand. (Ex. A Pg. 67:18-22).

Faya observed that Maryann did not kick him or any other officers nor strike anyone with her arms, and only the elbow part of her arms was flailing around. (Pg. 68:19-25, Pg. 69:13-15). Faya testified that Maryann complained that she could not feel her right hand, but he did not assess whether her arm was broken. (Ex. A Pg. 71:14-17, Pg. 82:5-10). He never admitted twisting her arm.

### 2.    Reyes' Testimony

Reyes testified seeing Tramontana on the Long Island Expressway along with about four or five vehicles following Maryann during the pursuit in Nassau County. (Ex. K Pg. 48:21-24, Pg. 58:17, Pg. 59:8). After joining the pursuit, over three or four vehicles separated Reyes' and Maryann's vehicles. (Ex. K Pg. 60:14-17).

Conflicting with Faya and Sweet, Reyes testified that Sweet and another unidentified officer were holding Maryann down on the ground. (Ex. K Pg. 73:3-25, Pg. 74:1-3). Unlike every other witness, Reyes testified that he handcuffed Maryann, and she did not resist, nor did she pull her arms away from Sweet or any of the other officers. (Ex. K Pg. 78:23-24, Pg. 79:8-16).

### 3.    Sweet's Testimony

Upon hearing a dispatch of a hit and run Sweet joined the pursuit of Maryann, observing only one car between his vehicle and Maryann's vehicle. (Ex. J at Pg. 25:7-25, Pg. 26:7-9, 20-23, Pg. 31:4-6).

After arriving at Maryann's Jericho home, Sweet was in physical contact with the right side of Maryann's body but felt that the occasion did not justify the use of a taser. (Ex. J Pg. 43:24-25, Pg. 44:1-2, 14-24, Pg. 45:21-24). In conflict with Faya and Reyes' depositions, Sweet testified that he did not know what caused Maryann to fall to the ground and that she was not trying to stand up or crawl away. (Ex. J Pg. 47:15-19, Pg. 50:12-16).

Unlike every other witness, Sweet testified Maryann communicated verbally before being placed in handcuffs but does not recall what she said. (Ex. J Pg. 54:19-22).

Sweet testified coming into physical contact with Maryann's right arm; specifically, both his hands were around her right tricep. (Ex. J Pg. 60:12-17). He

then pulled Maryann's arm out to her side to gain control of her arm, but he does not recall turning her wrist or how he pulled her arm out. (Ex. J Pg. 60:20-25, Pg. 61:2-25, Pg. 62:24-25, Pg. 63:2-6, 14-17).

Sweet testified that there was a risk to his safety because he did not know if she had weapons on her, yet he did not pat her down before pulling her arm out. (Pg. 95:13-21).

Contrary to Faya and Reyes', Sweet testified that Reyes handcuffed Maryann and that she was trying to pull her arm away, resisting arrest. (Ex. J Pg. 64:9-18, Pg. 65:19-20, Pg. 67:3-6). Sweet has no knowledge of whether he fractured Maryann's arm. (Ex. J Pg. 77:23-25).

### 4.    Tramontana's Testimony

Tramontana testified that during the vehicle pursuit there were no other police cars between the front of his vehicle and Maryann's vehicle, which conflicts with Faya's story. (Ex. I at Pg. 33:5-18).

When arriving at Maryann's Jericho home, Tramontana physically ran his body into Maryann to push her out of the way of the keypad that opens the garage door but testified that this did not cause her to fall to the ground. (Ex. I Pg. 46:18-21, Pg. 47:7-9).

Conflicting with Reyes' story, Tramontana observed Faya grab and pull Maryann to the ground, testifying that Faya seemed heavier than Maryann. (Ex. I Pg. 48:19-25, Pg. 49:1-6, Pg. 50:16-18).

Tramontana testified that Faya was on the ground with Maryann while one or two other officers were trying to handcuff her; and he grabbed one of her legs to protect it from kicking anyone. (Ex. I Pg. 53:14-25, Pg. 56:3-5). However, he also said Maryann did not kick anyone or strike anyone with her hands, and he did not consider using a taser, which he testified is used to get an individual under control. (Ex. I Pg. 56:10-21, Pg. 57:16-17)

### 5.    Dr. Mostafavi's Testimony as to the Injuries Sustained by Maryann

Dr. Mostafavi testified that Maryann suffered a displaced right spiral distal one-fourth humeral shaft fracture, which the preoperative x-rays also confirmed. (Ex. 3 at Pg. 18:12-19, Pg. 19:15-22). Dr. Mostafavi explained that Maryann's injury was a displaced spiral fracture associated with a twisting force. (Ex. 3 Pg.18:20-25, Pg. 19:1-10). He also described Maryann's second preoperative diagnosis, which was a displaced right intra-articular distal humerus fracture, which he testified is caused by twisting or torsion to the bone extends into the elbow joint. (Ex. 3 Pg. 20:10-25).

During surgery, Dr. Mostafavi noticed nothing that would lead him to believe that there was prior trauma to that area of Maryann's body. (Ex. 3 Pg. 28:3-9). He

saw that the Scarpa's fascia, an area that with this injury he tries to close over the triceps muscle, had significant swelling, which is an area of Maryann's body where Sweet testified he had contact. (Ex. 3 Pg. 36:23-25 and Pg. 37:1-11; Ex. K Pg. 60:12-17).

Although Defendants claim the prior car accident caused Maryann's injuries, Dr. Mostafavi testified that it would be shocking to drive after this fracture because the arm is dangling and he does not even ask patients to extend their elbows with this injury, given the extent of pain they would experience. (Ex. 3 Pg. 44:3-25). He does not believe that Maryann could have driven a car with the twist fracture on her right hand, given she is right-hand dominant. (Ex. 3 Pg. 44:2-12).

Further, Dr. Mostafavi claimed that from his discussions with Maryann, she also reported her injuries resulted from an argument with the police. (Ex. 3 Pg. 46:3-11)

### 6.    Dr. Luchs' Testimony as to the Injuries Sustained by Maryann

Dr. Luchs, a board-certified radiologist, reviewed o Maryann's X-rays. He testified that the X-rays of the right humerus and right elbow show a spiral fracture that "occurs with direct force to the upper extremity at the level of the fracture and/or the level of the fracture." (See Ex. 4 at pg. 2).

Dr. Luchs opined that the X-rays of the right humerus and right elbow from February 10, 2019 to July 25, 2019, indicate that the fracture sustained by Maryann

resulted from significant force and is not the typical result of a "fall or direct impact to the distal upper arm/elbow or shoulder." He stated this is a typical fracture resulting from direct trauma, such as "direct grabbing, or straining or twisting motion to this region." (Id. at pg. 3).

### POINT I

### AS THE PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE CANNOT BE DETERMINED AS A MATTER OF LAW, SUMMARY JUDGMENT IS INAPPROPRIATE

In seeking summary judgment, the Defendants both misunderstand and misapply the Plaintiff's burden. The Defendants provide multiple versions of the events preceding Maryann suffering a broken arm, speculatively claiming that it was broken in an accident, and ignoring the plaintiff's medical evidence that the break could only have occurred from a twisting of the arm, and that she likely could not have driven with the twist fracture she suffered.

Because a reasonable jury could conclude that the circumstantial evidence showed Ost's arm was twisted and fractured, when she was not resisting arrest, summary judgment is inappropriate.

**A.    The Standards of a Fourth Amendment Excessive Force Claim**

The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that

Amendment's reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Determining excessiveness requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Id.* at 396, 109 S.Ct. 1865 (internal quotation marks omitted). This balancing, the Court noted, requires careful attention to the facts and circumstances of each particular case. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (cleaned up)

"Because the Fourth Amendment test of reasonableness is one of objective reasonableness, the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)) (cleaned up); *see also Graham*, 490 U.S. at 396 ("Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' ... its proper application requires careful attention to the facts and circumstances of each particular case[.]" (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979))).

The "key question ... is 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard

13

to their underlying intent or motivation." *Chamberlain v. City of White Plains*, 960 F.3d 100, 113 (2d Cir. 2020) (quoting *Graham*, 490 U.S. at 397).

Courts consider the totality of the circumstances facing the officer, including "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396). The officer's actions must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396).

Even if an individual was resisting arrest, which has not been shown to have occurred here, it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020); *McKinney v. City of Middletown*, 712 F. App'x 97, 98 (2d Cir. 2018) (summary order) ("An officer's use of force must be reasonable even when an arrestee or detainee is actively resisting.").

Although resistance to arrest "no doubt justifies the officer's use of *some* degree of force," it does not "give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)

Because of the fact-specific nature of the excessive force inquiry, summary judgment against a plaintiff on the claim is only appropriate where "no reasonable factfinder could conclude that the [officer's] conduct was objectively unreasonable." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (citations omitted).

Where a plaintiff cannot testify, the Court does not have to simply accept the police officers' versions of the events. As the Second Circuit stated in *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) district courts "may not simply accept what may be a self-serving account by the police officer.

Rather, the court must also consider "circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *Moreira v. City of New York*, No. 19CV5402CBARER, 2022 WL 1230412, at *4 (E.D.N.Y. Jan. 14, 2022); *Est. of Priolo by Priolo v. City of New York*, No. 15-CV-6080(AMD)(ST), 2019 WL 1428403, at *5 (E.D.N.Y. Mar. 29, 2019)

**B.    The Evidence Presents Questions of Fact as to Whether the Officer's Used Excessive Force**

All of the Defendants deny using any twisting force on Maryann's arm.  Each had a varying story. But consistent throughout is a denial anyone grabbed Ost by her arm and twisted it or stepped on it. The extent of the Defendants' testimony is that they pulled her arms out from underneath her to handcuff her and that Ost suffered her injuries in the car accident.

The officers all disagree as to how Maryann Ost was handcuffed and by whom. Specifically, 1) Reyes said he she was held down by Sweet and an unidentified officer and he only handcuffed Maryann who was not resisting arrest; 2) Sweet stated he was in contact with Maryann's right side, pulled her arm out from underneath her for Reyes to handcuff her and that Ost was resisting arrest; 3) Faya claims that Ost's hands were underneath her, causing him to take control of her left hand, striking her in the back and handcuffing her left hand while Sweet handcuffed her right hand; 4) Tramontana claimed to ram his body into Maryann but does not know how she fell to the ground, and he held her legs while officers handcuffed her.

But both Plaintiff's treating surgeon and her radiological expert conclude that she could not have suffered the fracture under the Defendants' version of the encounter. This is because the fracture suffered by Maryann requires a twisting one which could only be caused by significant force on the arm sufficient to cause a fracture.

The discrepancy in how Maryann could have obtained the fracture to her arm presents a classic question of fact on the issue of reasonableness.

The facts in this matter present the "opposite side of the coin" as to those in *Moreira v. City of New York*, No. 19CV5402CBARER, 2022 WL 1230412, at *4 (E.D.N.Y. Jan. 14, 2022) In *Moreira* the district court granted summary judgment to police officers on the plaintiff's excessive force claim. The plaintiff did not provide

testimony and the officers denied using any force. The plaintiff claimed that scraps and bruises on his face and inconsistencies in the police officers' stories created an issue of fact under *O'Bert*.  In granting summary judgment Judge Amon concluded that the plaintiff did not provide circumstantial evidence that the officers used any force warranting summary judgment.

Unlike the Plaintiff in *Moreira*, Maryann can present circumstantial evidence beyond the varying stories of the police officers on which a reasonable jury could infer that Ost's arm was twisted by the officers in a such a violent way that it caused a fracture. Both Drs. Lust and Mostafavi state that Maryann's injury had to be caused by a twisting force to the forearm.  A jury can infer from this evidence that the Defendants' story is not true, and they used excessive force in placing Ost under arrest.

The facture Maryann suffered was far from a minor injury which could have occurred in placing Maryann's hands behind her back. Rather, it was a serious injury that required surgery. *Compare Schlaepfer*, 2022 WL 4484571, at *15 (noting that "[t]he *de minimis* nature of [p]laintiff's injuries confirm that the force used was not excessive," even though "a plaintiff need not have sought medical attention to support an excessive force claim")

Some of the Defendants testify that they feared for their safety because Maryann's hands were under her waist. At least one first saw Maryann trying to enter

17

her garage when she was brought down without displaying a weapon. It is not as if Maryann, who was a small woman, would overpower the officers. *Compare Pinero v. Burbran*, 18-CV-4698, 2021 WL 4224727, at *4 (S.D.N.Y. Sept. 16, 2021)

In trying to obtain summary judgment, the Defendants make several arguments that do not overcome the factual dispute between the officers' versions of events and the medical testimony of how Maryann's injury could have occurred. First, they claim that the "chase" that occurred justified the use of force (br.pg. 10) because they feared for their safety. The problem with this argument is that none of the officers claimed to have twisted Maryann's arm. And Reyes claims Maryann was not resisting arrest at all when they handcuffed her.

Next, the officers claim that Maryann's broken arm resulted from a car accident she suffered. This argument is purely speculative and directly contradicted by the evidence as no officer saw Maryann's arm in a broken condition. It is hard to fathom that Ost could have prevented the officers from cuffing her if her arm was broken and hanging down. This position is confirmed by Dr. Mostafavi who said this type of fracture would have made her arm "hang down" (essentially useless) and he did not believe she could have driven with it.  Not a single officer testified to subjecting Maryann's arm to twisting or significant force.

Finally, the officers' claim that Ost admitted to medical professionals that her injury was caused by the accident. This is not what was in the medical records. Rather, the medical records state that she was assaulted by police.

That Defendants misrepresent the medical records show their desperate nature in trying to eliminate questions of fact.  Under any circumstances, the evidence is inadmissible hearsay as the statements in the medical records were not "made for purposes of medical diagnosis or treatment." Fed. R. Evid. 803(4); *D.R. by Rodriguez v. Santos Bakery, Inc.*, 675 F. Supp. 3d 355, 360 (S.D.N.Y. 2023)

At bottom, this case presents a classic question of fact as to whether the Defendants used such excessive force, they broke Ost's arm requiring surgery with internal fixation. The Defendants' application for summary judgment must be denied.

## POINT II

**THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

In what could be described only as a half-hearted attempt, the Defendants claim they are entitled to qualified immunity.  The basis for the Defendants' application is murky. They do not argue that Ost's right to be free from the use of excessive force in being arrested was not clearly established. It was.

Rather, the Defendants' defense contends that the use of force by them was objectively reasonable.  But like the application for summary judgment, this

19

argument fails due to the Defendants' denial of any twisting force on Ost's arm causing the fracture, which both Ost's radiological expert and treating surgeon state caused the break.

Under these circumstances, the offices are not entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009) (internal citations omitted).

This Court will evaluate "claims of qualified immunity at summary judgment using a two-part inquiry: (1) whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right and (2) whether the right in question was clearly established at the time of the violation." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019)(internal quotations omitted). *See also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 255 (2d Cir. 2014).

In excessive-force claims, the issue turns on whether officers could disagree as to the objective reasonableness of the force used. This reasonableness inquiry often "overlap[s]" with the qualified immunity analysis. *See, e.g.*, *Cowan v. Breen*, 352 F.3d 756, 764 (2d Cir. 2003); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003). The difference is that "the qualified immunity inquiry goes on to ask whether any

constitutional violation was clearly established." *Jackson v. Tellado*, 236 F. Supp. 3d 636, 661 (E.D.N.Y. 2017).

A constitutional right is established "when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas*, 142 S. Ct. at 7; *see also Jones v. Treubig,* 963 F.3d 214, 224 (2d Cir. 2020) (right is clearly showed when it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

The Second Circuit has emphasized that "disputed material issues regarding the reasonableness of an officer's perception of the facts (whether mistaken or not) is the province of the jury, while the reasonableness of an officer's view of the law is decided by the district court." *Jones v. Treubig*, 963 F.3d 214, 231 (2d Cir. 2020); *see also Stephenson*, 332 F.3d at 78 ("[A]s the Supreme Court clarified in *Saucier*, claims that an officer made a reasonable mistake of fact that justified the use of force go to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity."); *Singh v. City of New York*, No. 23-24-CV, 2024 WL 319117, at *5 (2d Cir. Jan. 29, 2024)

While a mistaken belief that the force used was necessary can lead to qualified immunity, the Supreme Court has clarified that qualified immunity only protects "reasonable mistakes." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Here, the issue is whether the force used to arrest Maryann was excessive. The law surrounding the amount of force allowed when arresting an individual and handcuffing them is established. The initial question in the inquiry is whether the plaintiff was resisting arrest by refusing to be handcuffed when the questioned forced was used.

When a subject refuses an order to place their hands behind their back to be handcuffed, officers may do what is "necessary to subdue [him] and apply handcuffs." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 128 (2d Cir. 2009). Applying force is excessive in this context when it goes "*beyond* what [is] necessary" to cuff the individual. *Id.*; *see also Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003) (plaintiff may prevail on excessive force claim "if he is able to show that [the officer] used more force than was necessary to subdue him")(emphasis in original)

Here, issues of fact prohibit summary judgment on qualified immunity. First, all of the Defendants deny twisting Maryann's arm, grabbing it in a forceful way or stepping on it. As previously indicated, Maryann's treating surgeon and expert radiologist both state that the injury that Ost suffered could only occur by significant twisting of the arm.

The notion that the record concludes that the force used was objectively reasonable to any officer is meritless. On this record multiple questions of fact

22

abound on of whether the force used to handcuff Maryann was reasonable abound based on the Defendants denial of force and at least on officer's claim that she was not resisting arrest, and expert medical testimony that this force was used against Maryann.

Thus, summary judgment on qualified immunity must be denied.

## POINT III

## MARYANN'S STATEMENTS TO HER HUSBAND AS TO HOW SHE SUFFERED A BROKEN ARM ARE ADMISSIBLE

Defendants claim that Maryann's statements to her husband as to how she was subjected to excessive force are inadmissible hearsay. This position is wrong as her statements to her husband are excited utterances.

An "excited utterance" is recognized as an exception to the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. Rule 803(2).

"An excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998) (finding that descriptions of the declarant's demeanor as "all hyped" and "nervous" applied the exception, even though three hours had elapsed between the startling event and the declaration); *see also United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) (finding there was "little doubt" that declarant's statements were made

23

"under the stress of excitement" because witnesses claimed defendant was "very nervous" and "beaten up" while delivering the declaration five or six hours after he was beaten.) *Costanzo v. Cnty. of Suffolk*, No. 16CV3871JMAARL, 2022 WL 742875, at *3 (E.D.N.Y. Mar. 11, 2022)

Several factors may be considered in determining whether a speaker was under the stress of excitement, including: the nature of the event, [t]he time that lapsed between the startling event and the statement, the physical and psychological distance of the speaker from the startling event, and the appearance or demeanor of the speaker, as well as his behavior or condition." *Costanzo v. Cnty. of Suffolk*, No. 16CV3871JMAARL, 2022 WL 742875, at *3 (E.D.N.Y. Mar. 11, 2022) quoting *Zalewski v. City of New York*, No. 13-CV-7015, 2019 WL 8324447, at *2 (E.D.N.Y. Dec. 18, 2019).

Here the statements were made by Maryann to Chernick the day after she was released from the hospital and after appearing at arraignment.  This is sufficiently close in time to fall under the rule. *Id.* (statements made by inmate to others the day after release from custody admissible) This would have been the first time Maryann spoke to her husband after she was arrested and arraigned. The arrest and appearance in court for arraignment are sufficiently traumatic, and related to the actions of the Defendants, to make them admissible.

As Ost's statements are excited utterances, the Defendants' motion should be denied.

## CONCLUSION

Because of the existence of several material factual issues, Defendants' summary judgment motion must be denied and Plaintiff granted such other and further relief as is considered just and proper.

Dated:      July 26, 2024
                 Lake Success, New York

                        Respectfully submitted,
                        HARFENIST KRAUT & PERLSTEIN, LLP

By:      *Steven J. Harfenist*

               Steven J. Harfenist
               *Attorneys for Plaintiff*
               3000 Marcus Avenue, Suite 2E1
               Lake Success, New York 11042
               T: (516) 355-9600
               F: (516) 355-9601
               E: SHarfenist@hkplaw.com